UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------x

UNITED STATES OF AMERICA,          :

            -against-                          :          Docket No. 07 CR 303-01 (TPG)

MICAH FINKEL,                             :

                    Defendant.                :

--------------------------------------------------x


**DEFENDANT'S SENTENCING MEMORANDUM**


JOEL B. RUDIN (JR-5645)
Law Offices of Joel B. Rudin
200 West 57th Street, Suite 900
New York, New York 10019
Telephone:  (212) 752-7600
Facsimile:  (212) 980-2968
jbrudin@aol.com

*Counsel for Defendant*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

UNITED STATES OF AMERICA,              :

    -against-                    :     Docket No. 07 CR 303-01 (TPG)

MICAH FINKEL,                          :

       Defendant.                 :

-----------------------------------------------------x


## DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Micah Finkel, respectfully submits this memorandum in mitigation of sentence, which is scheduled for August 15, 2007, at 4:30 p.m. Letters on Mr. Finkel's behalf, including his own letter, and those of family members, friends, and his psychologist, are annexed hereto. This Memorandum assumes the Court's familiarity with the facts underlying this case, and with Mr. Finkel's background, based upon the Pre-Sentence Report and the aforementioned materials.

### The Pre-Sentence Report

The defendant has no objections to the Pre-Sentence Report. It correctly recommends a Total Offense Level of 18 and Criminal History Category I. In light of Mr. Finkel's circumstances, it recommends the minimum sentence under that Guideline of 27 months, and a $6,000 fine. Further, and most importantly, it notes that the sentence

is required to be imposed *concurrently* with the 40-month sentence already imposed on Mr. Finkel in the Middle District of Florida for his participation in a related marijuana case. *See* ¶¶ 45, 84. Indeed, the court in Florida considered Mr. Finkel's conduct underlying *this* case in sentencing him in that case above the minimum of the applicable Guideline range.

## Defendant's Involvement in the Offense

As the Pre-Sentence Report, and the attached letters, reflect, Mr. Finkel had personal problems, mostly arising out of his own regrettable use of drugs, which led to his involvement in marijuana distribution and this related money laundering offense. In mid-2005, after the seizure of the money underlying this prosecution, he unburdened himself to his father, then to his undersigned counsel, and went into psychotherapy. He did everything he could to withdraw from the Florida conspiracy, telling his co-conspirators to call off the venture and having no further participation in their activities, which continued through early 2006. He simply walked away from his investment.

About the same time, he met his wife, Meghan, she became pregnant, and they were married and had a beautiful baby boy. All of the above circumstances were life-altering for this highly intelligent, but troubled, young man. He has made a remarkable transformation, through the help of his loving family, his psychologist, and through his own maturation and insight that he simply cannot continue his old life-style given his new responsibilities in life and the wrongness of his former behavior.

The government's investigation in the Florida case confirmed that, after Mr. Finkel called his co-conspirators and tried to call off the venture, he had no further contact with any of them.

### Additional Personal Circumstances in Support of Sentencing at the Low End of the Applicable Guideline Range

Mr. Finkel's involvement in unlawful activities, while not an isolated act, nevertheless was aberrational when one looks at Mr. Finkel's full life. As the letters of his loving parents, sister, and other family members attest, he was raised in a warm home in which commitment to better society and to pursue humane values was always stressed. Although he had a drug use problem (which he did not recognize) from a young age, Micah did very well in school and eventually earned a B.S. from the University of Michigan. To pursue his interest in the environment, he participated in strenuous Outward Bound programs each summer as a teenager, spent a semester in Botswana promoting water conservation, majored in environmental science, worked for the U.S. Forest Service in the Alaskan wilderness, and then worked in Atlanta to start a local branch of an Italian company doing river reclamation work in the Southeast United States. When the company closed its office, he moved to New York, where he worked as a handyman at a well-known Greenwich Village playhouse known as the Cherry Lane Theatre, wrote and produced a children's play, the proceeds of which were donated to care for children with AIDs, wrote for a time for an on-line division of The New York Times, and then began his woodworking career, working for others before founding and

building his own company.

Unfortunately, Micah also had psychological demons which led him to experiment with and become psychologically addicted to drugs, and from time to time to alcohol. His head turned by a relationship with a beautiful young model living in the "fast lane" while Micah was barely eking out a living as a woodworking apprentice, he began an involvement in selling marijuana which led to his present criminal involvement. While he found ways, while using drugs, to rationalize this behavior, he had deep misgivings and feelings of guilt which ultimately led him to withdraw from the Florida conspiracy.

After Micah met and became deeply involved with Meghan, she became pregnant with their son, before he was arrested. He generously purchased a condominium apartment in Massachusetts for Meghan's mother to live in with funds he had received as an inheritance from his grandmother. He worked on rebuilding his relationship with his parents after he had hurt them so deeply by his involvement with selling drugs. And he continued to build up his woodworking business, Circle on the Dot Woodworks, and was registered to attend a school for fine woodworking in Maine.

Since his arrest, Micah has continued all these activities (except he had to drop the woodworking course). He married Meghan and they had their son, Wilder. Micah worked hard to finish the woodworking jobs he had taken on before he was sentenced in Florida, while spending all additional time with his young family. He has been a wonderful father to Wilder and it is already a tragedy for this innocent little boy that he

will be without his father for as long as Micah is imprisoned.  It will also certainly be a strain on Micah's still relatively new, two-year relationship with Meghan that he will be going away for however long a period of time.  These are factors which the Court may consider in determining an appropriate sentence under the applicable Guideline nd 18 U.S.C. § 3553(a).

We also believe the Court may consider Micah's extraordinary support network which will ensure, upon his release, that he has the emotional resources to continue his rehabilitation.  He and his wife and son have been living at the home of his parents on Long Island.  His aunts, uncles, cousins and friends, as their letters reflect, all have come forth to express their love for and faith in him and their dedication to help him complete the healing process.  This support provides strong reason to believe that society's interest in Micah's law-abiding behavior upon his release will be protected and that there is no need to prolong his imprisonment to deter him from repeating his wrongful activities.

## Recommendations to the Bureau of Prisons

We request, as recommended by the Probation Department, that the Court recommend to the Bureau of Prisons that Mr. Finkel be accepted into the 500 hour drug and alcohol treatment program.  The Florida court (Judge Steele) made such a recommendation.  Mr. Finkel unquestionably has a history of drug and alcohol abuse which contributed to his bad decision-making and involvement in this offense.  While he has managed to remain drug-free since his arrest, the tendency remains and needs to be

dealt with, as he recognizes, both while he is incarcerated and, afterwards, while he is on supervised release.

We also respectfully request that the Court recommend to the Bureau of Prisons that it designate Mr. Finkel to serve his sentence in the Northeast Region, which would facilitate visitation by his family, and, specifically, that he be designated to FCI McKean. This facility offers the drug and alcohol program. Unless he is designated there, there is a risk that he will not be transferred to a suitable facility in time to complete the program before the end of his sentence.

## CONCLUSION

The undersigned respectfully requests that, consistent with the Plea Agreement and the recommendation of the Probation Department, the Court sentence the defendant at the low end of Level 18 (27 months), to run concurrently with his Florida sentence, recommend the 500-hour drug and alcohol treatment program, and recommend designation to the Northeast Region, specifically FCI McKean. Thank you for your Honor's consideration.

Respectfully submitted,

JOEL B. RUDIN (JR-5645)
Law Offices of Joel B. Rudin
200 West 57th Street, Suite 900
New York, New York 10019
Telephone: (212) 752-7600
Facsimile: (212) 980-2968
jbrudin@aol.com
*Counsel for Defendant*

Dated:     August 8, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Jeffrey Brown, Esq.
Assistant United States Attorney
Southern District of New York
One St. Andrews Plaza
New York, New York 10007

_____
JOEL B. RUDIN